## J. A. McDaniel, et al. v. Ada J. McDaniel, Guardian Ad Litem.

(Decided June 23, 1922.)

### Appeal from Calloway Circuit Court.

1. Wills—Renunciation—Election.—A widow may renounce the provisions of a will in her favor and elect to take dower and distributable share.

2. Wills—Disregarding Paper Purporting to be Deed.—After the death of a testator and the probate of the will, some of the heirs produced a paper purporting to be a deed from the testator and his first wife to certain of his children, leaving out of the deed the children by the second wife; although the deed was made in 1909, it was not recorded until 1919, and there were many other suspicious circumstances surrounding its execution, recordation and destruction: Held, that the facts were sufficient to justify the court in disregarding the paper purporting to be a deed and distributing the property under the probated will.

J. C. SPEIGHT for appellants.

RAINEY T. WELLS for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

This judgment from the Calloway circuit court must be affirmed, but not altogether upon the grounds assigned

by the trial judge. W. P. McDaniel died testate on March 19, 1919, domiciled in Calloway county. He left surviving him a widow, appellee, Ada J. McDaniel, and ten children, eight being by a former marriage, all adults, and two by appellee, the last wife, aged five and nine years respectively. The will in contest is very brief and reads as follows:

"W. P. McDaniel being rational, wills to his wife, Ada McDaniel 100 acres of land off of the east end of testator's tract embracing the dwelling house and other buildings that used to be occupied by testator as a home it is not intended by the testator in this will to devise to his wife the fee in this land but the use of it only for herself or to be rented out by her to help maintain her and the children she is to have use of said 100 acres of land as long as she lives but not to sell same or otherwise treat same as hers this tract to be taken off of the quarter section on which testator lived, the taxes and repair of this property to be paid by my wife, testator desires the balance of his property at his death to pass to his distributees in the manner directed by the statutes of Kentucky.

"This Oct. 28, 1916.

"W. P. McDaniel.

"Ben B. Keys,
"T. F. Pogue,
"T. W. Thompson, Witnesses."

After the probation of the will the widow renounced its provisions and elected to take dower and distributable share under the law. This was done on May 17, 1919. On January 1, 1920, she qualified as guardian of her infant children. At the time of the death of McDaniel, or at least some years previous thereto, he was the owner of about 400 acres of land in Calloway county, upon a part of which he lived. He desired to provide for all his children as well as for his widow. After the probate of the will copied above, some one or more of the children of McDaniel by his first wife produced and caused to be recorded in the office of the clerk of the Calloway county court a deed purporting to have been made by W. P. McDaniel and his first wife, Ellen McDaniel, about two months before the death of said first wife, by which the testator gave to his eight children by his first wife about 220 acres of land, reserving 100 acres where the houses stood, also the use and rents of the land conveyed so long as he and his wife lived Although this deed bears date February 1,

1908, it was never recorded until the 28th day of April, 1919, nor had anyone except J. A. McDaniel seen it from the time of its execution until it was produced by him at the office of the clerk of the Calloway county court for record. Shortly after the deed was recorded the original was lost and cannot be found. It purports to have been acknowledged before H. S. Morgan, a deputy clerk under J. N. Miller. H. S. Morgan is dead and of course can not be produced as a witness. As the original deed is lost and no one can examine the handwriting of the signatures of the alleged grantors, it is difficult to prove its authenticity although two or three of the children of McDaniel by his first wife say that in their younger days they remember their father making such a deed and that it was acknowledged before Morgan; they say that they paid no attention to the matter and did not make any inquiry about it thereafter or know who had possession of the deed or what share or portion of the land they were to receive under it. The original deed was in typewriting but it is proven that there were only four such machines in Calloway county in 1908, at the time of the execution of the deed, and defendants charge Morgan lived out in the county and had no such machine. His education was very limited and he could not operate a typewriter.

It is the contention of appellee that this deed is a forgery, and the facts surrounding its production and recordation strongly tend to prove that to be true. It is hardly believable that men of the age and sense of J. A. McDaniel and his brothers would, under the circumstances of this case where there was a stepmother and a half-blood brother and sister involved, have waited until after the death of their father and after the renunciation by the widow of the terms of their father's will to make public for the first time the execution of the deed to them for a very large portion of his landed estate. Certainly if they had produced it during the life of their father he would have been a strong witness for them, if he made and executed the deed. They must have known, as reasonable persons, that the infant children of their father by the last wife would dispute their right to 220 acres of their father's land, especially under circumstances like prevailed in this case where they had never heard of such a deed, although made many years before the death of the father, until several months after his death.

The will which the testator executed on October 28, 1916, some eight years after the alleged deed was made, clearly proves that he had not made such a deed as claimed by appellants; or, if he had, he revoked it as it was nothing more than a testamentary paper. To the end of his days he held, occupied and cultivated the whole of his farm. Even J. A. McDaniel and others of his first children tried to buy from him at different times portions of the land which they say was deeded by him to them in 1908. All this is so inconsistent with the execution of an admitted will on the part of the father that we must hold that no deed was in fact made by the father to his first children in 1908, or at any other time. The trial court held that the paper purporting to be a deed made in February, 1908, to the children of his first wife was a mere will which was revoked by the execution of his last will, copied above. We do not exactly disagree with the learned trial judge but we think he might have gone further and corrected the entire mistake. Under the terms of the will as probated the widow could have taken a life estate in 100 acres of land where the mansion house and other improvements are, in and on which to live and rear her two infant children, but she elected to take dower and distributable share. After this is assigned the balance of the land may be divided in kind or sold and the proceeds divided according to the rights of the case among all of the children of McDaniel, each sharing alike. At the death of the widow the 100 acres in which she has a life estate may likewise be subdivided. The will of McDaniel proves beyond doubt that he was a very just and considerate man and wished to divide his property equally among those to whom he owed his bounty.

Judgment affirmed.